**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| AFA INVESTMENT, INC., et al. | ) | Case No. 12-11127 (MFW) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| NADIA SANCHEZ, on behalf of herself | ) | |
| and all others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 12-50710 (MFW) |
| | ) | |
| AFA FOODS, INC., AFA INVESTMENT, | ) | |
| INC., and YUCAIPA CORPORATE | ) | |
| INITIATIVES FUND II, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**[1]

Before the Court is the Motion of Yucaipa Corporate
Initiatives Fund II, LLC ("Yucaipa") to Dismiss the Complaint
filed by Nadia Sanchez ("Sanchez") for failure to state a claim
for relief. For the reasons set forth below, the Court will
grant the Motion.

---

[1] The Court is not required to state findings of fact or
conclusions of law pursuant to Rule 7052(a)(3) of the Federal
Rules of Bankruptcy Procedure. Accordingly, the Court herein
makes no findings of fact or conclusions of law. Instead, the
facts recited are as averred in the Complaint, which must be
presumed as true for the purposes of this Motion to Dismiss. See
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

I.   <u>BACKGROUND</u>

AFA Foods, Inc. ("AFA Foods") is wholly owned by AFA Investment, Inc. ("AFAI") (collectively, the "Debtors").  AFAI, in turn, is owned by Yucaipa.  AFA Foods and its various subsidiaries were leading distributors of ground beef and hamburger patties for major retail and food-service clients and operated beef-processing facilities in California, Georgia, New York, Pennsylvania, and Texas.

In March 2012, Debtors' business took an unexpected downturn as a result of extensive negative media coverage over the use of boneless lean-beef trimmings, dubbed "pink slime," in beef products sold by AFA Foods to retail and food-service clients.  Public outcry led to a precipitous drop in sales of all ground-beef products, including those that did not contain boneless lean-beef trimmings.  On April 2, 2012, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Later that week, the Debtors reduced the workforce at some of its facilities, terminating many employees including Sanchez, who worked at AFA Foods' facility in Los Angeles, California.

On May 10, 2012, Sanchez filed a Class Action Complaint (the "Complaint") alleging that she and 200 or so other employees at AFA Foods' plants around the country were terminated without advance notice in violation of the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 et seq. (the "WARN

2

Act") and the California Labor Code § 1400 et seq. (the "CAL WARN Act").  On August 8, 2012, Yucaipa filed a Motion to Dismiss the Complaint for failure to state a claim.  Briefing has been completed and the matter is ripe for decision.


II.  <u>JURISDICTION</u>

    This Court has core jurisdiction over this adversary proceeding.  28 U.S.C. §§ 1334 & 157(b)(2)(B).  The Court has the power to enter an order on a motion to dismiss even if the matter is non-core or the Court lacks authority to enter a final order.  <u>See, e.g.</u>, <u>Boyd v. Kind Par, LLC</u>, Case No. 11-CV-1106, 2011 WL 5509873, at *2 (W.D. Mich. Nov. 10, 2011) ("[U]ncertainty regarding the bankruptcy court's ability to enter a final judgment . . . does not deprive the bankruptcy court of the power to entertain all pretrial proceedings, including summary judgment motions."); <u>In re Trinsum Grp., Inc.</u>, 467 B.R. 734, 739 (Bankr. S.D.N.Y. 2012) ("After <u>Stern v. Marshall</u>, the ability of bankruptcy judges to enter interlocutory orders in . . . proceedings has been reaffirmed . . . .").


III. <u>DISCUSSION</u>

    A.    <u>Standard of Review</u>

    For Sanchez to survive a Rule 12(b)(6) motion, her claim must meet the standards of pleading.  The Supreme Court's

decisions in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and
Ashcroft v. Iqbal, 556 U.S. 662 (2009), have shifted federal
pleading standards from notice pleading to a heightened standard
of pleading.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d
Cir. 2009).  This heightened pleading requirement applies to all
civil suits in federal courts.  Id.

To survive a motion to dismiss under the new pleading
standard, a complaint must contain "sufficient factual matter,
accepted as true, to state a claim to relief that is plausible on
its face." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at
570).  A claim is facially plausible "when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  Id.  "[A] pleading offering only labels and
conclusions or a formulaic recitation of the elements of a cause
of action will not do."  Fowler, 578 F.3d at 210 (quoting
Twombly, 550 U.S. at 555).  "Courts have an obligation in matters
before them to view the complaint as a whole and to base rulings
not upon the presence of mere words but, rather, upon the
presence of a factual situation which is or is not justiciable."
Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 184
(3d Cir. 2000).  A court must "draw on the allegations of the
complaint, but in a realistic, rather than a slavish, manner."
Id.

Determining whether a complaint is "facially plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not shown — that the pleader is entitled to relief." Id.

The Third Circuit has instructed courts to conduct a two-part analysis. Fowler, 578 F.3d at 210. "First, the factual and legal elements of a claim should be separated," with the reviewing court accepting "all of the complaint's well-pleaded facts as true, but . . . disregard[ing] any legal conclusions." Id. at 210-11. Next, the reviewing court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." Id.

B.    WARN Act Claim

Sanchez brings the action on behalf of herself and similarly-situated former employees who were terminated on or around April 6, 2012. Sanchez asserts that these employees were not provided 60 days advance written notice of their terminations by the Debtors, as required by the WARN Act and the CAL WARN Act. Further, Sanchez argues that Yucaipa and the Debtors are both liable because they constituted a "single employer" for purposes of the WARN Act and the CAL WARN Act.

Yucaipa responds that Sanchez has not alleged facts in the Complaint that would establish a right to relief under the WARN Act and the CAL WARN Act because Yucaipa and the Debtors were not a "single employer" and because Sanchez has failed to allege the Debtors terminated the minimum number of employees required to constitute a "mass layoff."

1.   Single Employer Test

The WARN ACT defines the term "employer" as "any business enterprise" that employs 100 or more full-time employees.  29 U.S.C. § 2101(a).  Although the WARN Act does not define "business enterprise," Department of Labor regulations issued under the WARN Act state that two or more affiliated companies may be considered a single "business enterprise" for WARN Act purposes.  20 C.F.R. § 639.3(a)(2).  The regulations provide that "independent contractors and subsidiaries which are wholly or partially owned by a parent company are treated as . . . part of the parent or contracting company depending upon the degree of their independence from the parent."  Id.

The Third Circuit has adopted a five factor balancing test for determining whether related companies are liable under the WARN Act on "single employer" grounds.  The five factors are: "(1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) dependency of

6

operations." In re APA Transport Corp. Consol. Litig., 541 F.3d
233, 243 (3d Cir. 2008) (citing Pearson v. Component Tech. Corp.,
247 F.3d 471, 494 (3d Cir. 2001).  The Third Circuit, however,
stated that the factors are not balanced equally, "the first and
second factors, common ownership and common directors and/or
officers, are not sufficient to establish that two entities are a
single employer." Id. (quoting Pearson, 247 F.3d at 494
("ownership – and even ownership coupled with common management –
is not a sufficient basis for liability")).  Similarly, the fifth
factor, dependency of operations, "cannot be established [merely]
by the parent corporation's exercise of its ordinary powers of
ownership, i.e; to vote in directors and set general policies."
Pearson, 247 F.3d at 501.

In the Complaint, Sanchez asserts, in support of her
contention that Yucaipa and the Debtors constituted a "single
employer," the following:

> (a) The Defendants shared common ownership; (b) The
> Defendants shared common officers and directors; (c)
> All of the Defendants exercised de facto control over
> the labor practices governing the Plaintiff and Class
> Members, including the decision to order the mass
> layoff or plant closing at the Facilities; (d) There
> was a unity of personnel policies emanating from a
> common source between Defendants; and (e) There was a
> dependency of operations between Defendants.

(Adv. D.I. 1 at ¶ 37.)[2]

---

[2]  Citations to pleadings in the bankruptcy case are "D.I.
#" and to pleadings in the adversary proceeding are "Adv. D.I.
#."

Yucaipa responds that the Complaint is deficient because it pleads almost no fact in support of her WARN Act claims against Yucaipa, but is simply a boilerplate recitation of the five legal factors relevant to the "single employer" test.  See, e.g., Iqbal, 556 U.S. at 663 ("[t]headbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim); Santiago v. Warminster Twp., 629 F.3d 121, 133 (3d Cir. 2010) (holding that allegations that are merely consistent with a defendant's liability or show the mere possibility of misconduct are not enough) (internal citations omitted).

Yucaipa states that the mere recitation of the elements of the single employer test cannot survive a motion to dismiss.  In re Consolidated Bedding, 432 B.R. 115 (Bankr. D. Del. 2010).  In Consolidated Bedding, former mattress company workers brought federal and California WARN Act claims against American Capital, a private equity firm that acted as the company's lead financier and equity holder.  Id. at 118.  In the complaint, the workers alleged that: (1) American Capital was the majority shareholder and/or majority equity holder of the Debtors, (2) employees of American Capital served on the Debtors' Board of Directors, (3) by virtue of the American Capital directors' service on the Debtors' boards of directors, American Capital exercised de facto control over the Debtors, and (4) American Capital made the

8

decision to close the facilities and file for bankruptcy.  Id. at
119-21.  The Court held that "although American Capital
supervised much of the Debtors' activities and American Capital
employees occupied seats on the Debtors' boards of directors, the
Debtors at all times remained separate business entities that did
not rely on American Capital for day-to-day operations."  Id. at
124.  The Court concluded that alleged facts did not provide a
basis to infer the "high degree of integration required under
Pearson."  Id.

Sanchez responds that a complaint need not go beyond the
five-factor allegations to state a single-employer WARN liability
claim.  Hiles v. Inoveris, No. 2:09-CV-53, 2009 WL 3671007, at *4
(S.D. Ohio Nov. 4, 2009).  The Inoveris Court concluded that
questions regarding a parent company's control over its
subsidiary should not be answered "until the [p]laintiffs have
had some opportunity to conduct discovery on the matter."  Id.
The Court stated that "detailed factual allegations are not
required, particularly where, as here, the defendants are in
control of such information or it is otherwise unavailable to the
plaintiffs."  Id. at *4-5.

In Consolidated Bedding, however, the Court noted that
Inoveris "followed pre-Twombly/Iqbal case law."  432 B.R. at 125.
The Court agrees.  The findings in Inoveris are at odds with the
letter and spirit of Twombly and Iqbal that a complaint will not

suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Iqbal, 556 U.S. at 677 (quoting Twombly, 550 U.S. at 557). The law is clear that Sanchez should not be permitted to take discovery until she properly pleads a plausible cause of action. See, e.g., Iqbal, 556 U.S. at 678-79 (holding that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); Smith v. Pallman, 420 Fed. App'x 208, 214 (3d Cir. 2011) ("[Plaintiff]'s contention that the District Court should have permitted her to engage in discovery fails. Discovery is not required prior to dismissal."); S. Jersey Gas Co. v. Mueller Co., Ltd., Civil No. 09-4194, 2011 WL 5873028, at *7 (D. N.J. Nov. 18, 2011) (holding that the "law is now settled that plaintiff cannot take discovery until [she] properly pleads a plausible cause of action").

In this case, Sanchez relies on Yucaipa's common ownership and the existence of common officers and directors to assert single employer liability under the WARN Act and the CAL WARN Act. However, "ownership – and even ownership coupled with common management – is not a sufficient basis for [WARN Act] liability." Pearson, 247 F.3d at 494.

In order to satisfy the third factor (de facto control), Sanchez must allege facts sufficient to establish that it is plausible that Yucaipa "was the decision[-]maker responsible for the employment practice giving rise to the litigation." Pearson,

10

247 F.3d at 503-04.  In the Complaint, Sanchez asserts that
"[a]ll of the Defendants exercised de facto control over the
labor practices governing the Plaintiff and Class Members,
including the decision to order the mass layoff or plant closing
at the Facilities."  (Adv. D.I. 1 at ¶ 37.)  Sanchez, however,
does not allege any specific facts showing how Yucaipa controlled
the decision-making process.  Simply stating that Yucaipa made
the decision to order the mass layoff is insufficient.  Further,
simply stating that members of Yucaipa served on the Debtors'
Board of Directors is insufficient to satisfy the de facto
control factor absent "facts showing that the [investor-
affiliated] Directors were wearing their [investor] 'hats' while
making difficult decisions for the Debtors to close the
Facilities and file for bankruptcy."  Consolidated Bedding, 432
B.R. at 122.  See also Pearson, 247 F.3d at 504 (stating that
"the 'de facto exercise of control' factor is not intended to
support liability based on a parent's exercise of control
pursuant to the ordinary incidents of stock ownership").

   With respect to the fourth factor (policies emanating from a
common source), Sanchez alleges that Yucaipa "maintained
centralized control over payroll and other personnel policies,
including manner and rates of pay and incentive and benefits
programs."  (Adv. D.I. 1 at ¶ 11(a).)  Sanchez, however, again
fails to state any facts to show that "the two companies in

question engaged in centralized hiring and firing, payment of wages, and personnel and benefits recordkeeping." APA Transport, 541 F.3d at 245.  Sanchez does not allege that Yucaipa established any specific personnel policies on behalf of the Debtors or that it enforced any such policies.  Thus, the Complaint does not support the conclusion that Yucaipa and the Debtors "actually functioned as a single entity with respect to [personnel] policies on a regular, day-to-day basis." Pearson, 247 F.3d at 490.

Further, with respect to the fifth factor (dependency of operations), Sanchez alleges that Yucaipa "provided the Defendants subsidiaries [sic] with managerial, financial, operational and administrative support on which they substantially depended."  (Adv. D.I. 1 at ¶ 11(d).)  To satisfy this factor, "courts generally consider the existence of agreements to share administrative or purchasing services, exchanges of employees or equipment and commingled finances." Consolidated Bedding, 432 B.R. at 122.  Plaintiff has alleged no facts to support this conclusory assertion, and the natural conclusion that one would draw from the fact "that [Yucaipa] continued to operate without incident after [the Debtors] folded" is that Yucaipa and the Debtors were not interdependent. APA Transport, 541 F.3d at 245.

12

The Court finds that the allegations of the Complaint are bald assertions of the corresponding legal factors and do not provide a basis from which the Court can infer the high degree of integration required under Pearson.  See, e.g., Consolidated Bedding, 432 B.R. at 122-23 (holding summary allegations were mere "legal conclusions or factually unsupported and therefore not entitled to an assumption of truth").  Thus, it is not plausible from the allegations stated in the Complaint that the Debtors relied on Yucaipa for day-to-day operations or that Yucaipa controlled the Debtors' business in something more than an investor's role.  Accordingly, the Court will grant Yucaipa's Motion to Dismiss the Complaint.

2.   Number of Employees Terminated

Yucaipa also argues that Sanchez fails to plead that there were sufficient job losses at AFA Foods to trigger application of the WARN Act and the CAL WARN Act.  The WARN Act requires that employees be provided notice of a "plant closing" or "mass layoff."  29 U.S.C. § 2101(a).  A "plant closing" requires a "permanent or temporary shutdown of a single site of employment" for 50 or more employees.  29 U.S.C. § 2101(a)(2); 20 C.F.R. § 639.3(b).  A "mass layoff" is any other reduction in force, not attributable to a plant closing, that results in employment loss at a single site of employment of 50, or at least 500 employees firm-wide.  29 U.S.C. § 2101(a)(3); 20 C.F.R. § 639.3(c).

13

In the Complaint, Sanchez states that she brings the action on behalf of herself and approximately 200 other similarly-situated former employees who were terminated in the mass layoff or plant closing.  Yucaipa asserts that the Complaint does not allege that more than 50 employees were terminated at any of the employment sites at which the members of the putative class are said to have been employed (California, Georgia, New York, Pennsylvania, and Texas).  Given that the size of the putative class is 200 and that class members were spread across five separate facilities, Yucaipa argues that the 50 employee limit per facility was not met.  See, e.g., Bader v. N. Lane Layers, Inc., 503 F.3d 813, 818 (9th Cir. 2007) (holding that facilities "cannot be aggregated under the [governing regulations] because those sites are located in many different states and are not in reasonable geographic proximity or in the same geographic area").

The Court agrees with Yucaipa that Sanchez may not aggregate layoffs from several different sites of employment in order to meet the statutory minimum of 50 employees.  See, e.g., Williams v. Phillips Petroleum Co., 23 F.3d 930, 934 (5th Cir. 1994) (holding that the Texas and Oklahoma facilities did not constitute a single site of employment and could not be aggregated to meet the WARN minimum required for a mass layoff).  Thus, it is unclear from the face of the Complaint, that the minimum number of employees was satisfied at any of the plants.

14

Thus, the Court will also grant Yucaipa's Motion to Dismiss on this basis.

      C.   <u>Leave to Amend</u>

     Normally, when granting a motion to dismiss, leave will be freely granted to amend the complaint.  <u>See, e.g.</u>, <u>Shane v. Fauver</u>, 213 F.3d 113, 115-16 (3d Cir. 2000) (holding that the court should generally grant leave to amend a complaint dismissed for failure to state a claim); <u>Boileau v. Bethlehem Steel Corp.</u>, 730 F.2d 929, 938 (3d Cir. 1984) (noting that a presumption exists in favor of granting the moving party leave to amend); <u>Burtch v. Henry Prod., Inc. (In re AE Liquidation, Inc.)</u>, Adv. No. 10-55478, 2012 WL 32589, at *2 (Bankr. D. Del. Jan. 6, 2012) (holding that leave to amend should be freely given in the absence of undue delay, bad faith, undue prejudice, or futility).

     In this case, the Court does not find bad faith, undue prejudice, or futility.  The Court will, therefore, grant Sanchez 30 days to amend the Complaint.


IV.  <u>CONCLUSION</u>

     For the foregoing reasons, the Court will grant Yucaipa's Motion to Dismiss, with leave to amend the Complaint.

An appropriate Order is attached.


Dated: December 14, 2012             BY THE COURT:


                                     Mary F. Walrath
                                     United States Bankruptcy Judge